UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **MARKET STREET PROPERTIES, L.L.C.** | **09-14172** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| **DEMCO, INC.** | ADVERSARY NO. |
| PLAINTIFF | **13-1101** |
| VERSUS | |
| **MARKET STREET PROPERTIES, L.L.C., ET AL** | |
| DEFENDANTS | |

### REASONS FOR DECISION

On February 13, 2014, the Motions to Dismiss Adversary Proceeding[1] filed by Boxer Finance, L.L.C. ("Boxer") and Market Street Properties, L.L.C. ("MSP"), as well as the Motion to Dismiss Party for Lack of Jurisdiction[2] filed by Entergy New Orleans, Inc. ("Entergy"), came before the Court. At the hearing, the plaintiff, Demco, Inc. ("Demco"), withdrew its allegation of constructive trust. The parties also stipulated that the administrative expense claim of Demco is not part of this Complaint and is subject to the Consent Order Regarding Demco's Motion Seeking Allowance and Payment of Administrative Expense Claim dated October 17, 2013.[3] Based on the parties reliance on documents outside of the pleadings, the Court treated the Motions to Dismiss as Motions for Summary Judgment, and ordered MSP to file a list of "what pending claims exist for

---

[1] P-23 and 24.

[2] P-16.

[3] Case no. 09-14172, P-635.

Demco, Inc. against the escrow account and the status of those claims," as well as ordering all parties to file supplemental briefs.[4] The Court later issued a Supplemental Order[5] requiring MSP to file:

> [A] chart showing all invoices submitted to it by Demco, Inc.; for each invoice, whether Remediation Withdrawal Certificates were submitted against the Environmental Escrow Account; if so, the date of the submission and its status; if not, a certification that no Remediation Withdrawal Certificate was submitted for that invoice.

When MSP failed to timely submit the documentation as ordered, the Court issued an Order to Show Cause.[6] MSP complied with the Court's Order prior to the hearing.[7] At the June 13, 2014, hearing on the Order to Show Cause, the Court ordered MSP's representative, John Mannone, to provide "copies of any documents from Capital One, N.A. which relate to pre-petition requests for reimbursement of invoices."[8] The Court again ordered the filing of supplemental briefs by Demco, MSP, Boxer, and Entergy.[9] Upon filing of the briefs, the Court took the matter under advisement.

**I. Findings of Fact**

On December 26, 2006, MSP and Entergy entered into a Purchase Agreement over land owned by Entergy ("the Property"). Because environmental remediation was necessary on the Property, MSP and Entergy entered into an Environmental Escrow Agreement ("Escrow

---

[4] *See* P-32.

[5] P-40.

[6] P-41.

[7] P-42.

[8] *See* P-43.

[9] P-45.

Agreement") on January 16, 2007.[10] Pursuant to the terms of the Escrow Agreement, MSP deposited $4,000,000 in an Escrow Account. Separately MSP borrowed the $4,000,000 from Boxer and assigned Boxer its interest in the Escrow Agreement as security for the loan.[11]

Capital One, N.A. ("Capital One") is the Escrow Agent for the Escrow Account.[12] Under the terms of the Escrow Agreement, Capital One can only release the funds in the Escrow Account under the following circumstances:

(1) Written instructions signed by both Entergy and MSP;

(2) To pay its own fees as Escrow Agent;

(3) Upon receipt of a Remediation Withdrawal Certificate in a particular form represented by MSP as relating to Remediation Activities at the Property and if the Escrow Agent does not receive within ten (10) days a written objection to payment from Entergy;

(4) Upon receipt of a Remediation Completion Certificate and after a thirty (30) day period for Entergy to object;

(5) Upon receipt of a No Activity Certificate signed by both MSP and Entergy;

(6) Upon receipt of instructions and a certificate signed by Entergy "stating that one or more Indemnitees ... has obtained a final, non-appealable judgment";

(7) Upon receipt of instructions by MSP for the payment "to MSP of any interest or proceeds earned on the Escrow Funds."[13]

---

[10] P-1, exh. A.

[11] P-48, exh. B-3.

[12] Capital One is a defendant in this adversary proceeding.

[13] P-1, exh. A, section 3.

On April 11, 2007, MSP entered into a Services Contract[14] with Demco to remediate the Property. The Services Contract does not mention the Escrow Agreement.

On December 23, 2009, MSP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. MSP scheduled Demco as a creditor holding an unsecured nonpriority claim in the amount of $1,649,728.[15]

Prior to MSP's bankruptcy, Demco submitted twenty-one (21) invoices to MSP for a total of $1,801,092.06. As required for payment under the Escrow Agreement, MSP submitted to the Escrow Agent Remediation Withdrawal Certificates for each of the twenty-one (21) invoices it received from Demco prior to MSP's bankruptcy filing. The only amount paid to Demco by MSP pre-petition was $100,000 in 2007.[16] The standard form Withdrawal Remediation Certificates require the Escrow Agent to make payment directly to the environmental remediation contractor from the Escrow Account.

Demco continued to remediate the Property post-petition and was granted an administrative expense claim for post-petition work.[17]

On January 4, 2012, this Court approved a settlement between Boxer and MSP.[18] Pursuant to the settlement, MSP transferred certain real property on Tchoupitoulas St., New Orleans,

---

[14] P-35, exh. A.

[15] Case no. 09-14172, P-24, Schedule F.

[16] MSP paid Demco for invoices 526-1 and 526-2 and made a partial payment on invoice 526-3.

[17] Case no. 09-14172, P-635.

[18] Case no. 09-14172, P-491.

Louisiana, to Boxer for a $2,000,000 credit on its indebtedness.[19] MSP also granted Boxer an assignment of its interest in the Escrow Agreement and Account and an unsecured claim in the amount of $2,000,000. Boxer in turn released its lien and mortgage against the Property.

This Court confirmed MSP's Plan of Reorganization ("Plan") on October 24, 2012.[20] The Plan treated Demco as an unsecured creditor, and Demco has received $8,630.34 on its claim.

Demco received notice of the bankruptcy filing, all deadlines, a copy of MSP's Disclosure Statement, Plan, and the Order Confirming the Plan. Demco did not object to the Disclosure Statement or Plan.

Demco filed a Complaint against MSP, Boxer, Entergy, and Capital One seeking a declaration that:

(1) the confirmed Plan does not bar Demco from seeking payment on pre-petition invoices;

(2) MSP or Boxer only has a right to the Escrow Account only after environmental remediation is completed;

(3) MSP represented to Demco that it would be able to rely on the Escrow Account for payment;

(4) Demco detrimentally relied on representation of MSP that it would pursue payment to Demco from the Escrow Account;

(5) Demco is a third party beneficiary under the Escrow Agreement;

(6) MSP is a fiduciary to Demco and has a legal, equitable, and fiduciary obligation to pursue payment to Demco from the Escrow Account;

(7) MSP failed to meet its legal, equitable, and fiduciary obligation.[21]

---

[19] *See* P-493.

[20] Case no. 09-14172, P-571.

[21] P-1. Demco abandoned its allegation of constructive trust.

Demco's Complaint also seeks a permanent mandatory injunction compelling MSP to pursue payment to Demco.

Entergy filed a Motion to Dismiss Party for Lack of Jurisdiction,[22] and both Boxer and MSP filed Motions to Dismiss the Adversary Proceeding[23] which are being treated as Motions for Summary Judgment.

**II. Legal Analysis**

**A. Motion to Dismiss Party for Lack of Jurisdiction filed by Entergy**

Entergy seeks dismissal as a party to this adversary pursuant to Federal Rule of Civil Procedure 12(b)(1), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b). Entergy alleges that Demco's claims against it are purely state law claims that do not arise under Title 11 of the United States Code. Demco's claims against Entergy request interpretation of the Escrow Agreement, a Louisiana contract.

Claims against a debtor and the objections thereto are core proceedings over which a bankruptcy court has jurisdiction.[24] A bankruptcy court has jurisdiction over a debtor's counterclaims against a creditor in limited circumstances.[25]

Prior to MSP's bankruptcy filing, it submitted several Remediation Withdrawal Certificates requesting the release of funds from the Escrow Account for work performed by Demco. If those Remediation Withdrawal Certificates were in a form required, if they were payable to Demco, and

---

[22] P-16.

[23] P- 23 and 24.

[24] *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

[25] *In re Fazin*, 723 F.3d 313 (5th Cir. 2013).

6

if Entergy failed to assert an opposition to their payment within ten (10) days, the Escrow Agent would be bound to honor the request for withdrawal.

MSP's rights to the Escrow Account are defined by the Escrow Agreement and consist of a right to direct payment to environmental remediation contractors and reserve any residual funds in the Escrow Account after full remediation of the Property and release by Entergy. As MSP had already requested withdrawal and release of funds from the Escrow Account, Demco's right to seek payment from the Escrow Account is dependent on the terms of the Escrow Agreement and the facts arising after the submission of the Remediation Withdrawal Certificates. Those rights are not against MSP but the Escrow Agent and Entergy.

To the extent Demco asserts claims against Entergy, those claims do not involve any claims by or against the debtor, MSP, or property of the estate.[26] Therefore, this Court does not have jurisdiction over Demco's claims against Entergy and will dismiss the Complaint without prejudice.

### B. Motions to Dismiss the Adversary Proceeding filed by Boxer and MSP

In a Motion to Dismiss for "failure to state a claim upon which relief may be granted" pursuant to Federal Rule 12(b)(6), only the pleadings may be considered. Because the parties sought

---

[26] *See Executive Benefits Ins. Agency v. Bellingham Ins. Agency,* 134 S.Ct. 2165 (2014). As previously explained, MSP's only rights in the Escrow Account arise under the terms of the Escrow Agreement. As MSP consented to payment of Demco from the Escrow Account prepetition and has failed to assert any defenses to payment, it has no right to object to the Escrow Agent's release of funds. Not only did MSP file Remediation Withdrawal Certificates directing the Escrow Agent to pay Demco, it failed to object to the Demco's proof of claim in bankruptcy court, which indicates no opposition to the amounts owed. Notably, the Withdrawal Remediation Certificates instruct the Escrow Agent to pay Demco directly. Therefore, at confirmation, MSP only retained rights in the residual amounts net of any payments, if appropriate, to Demco.

to introduce documents outside of the pleadings, the Court is treating the Motions as Motions for Summary Judgment and has allowed sufficient time for the parties to supplement their motions.[27]

### 1. Summary Judgment Standard

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.[28] The Court must view the evidence introduced and all factual inferences in the light most favorable to the party opposing summary judgment.[29] The movant bears the burden of proving "absence of genuine issue of material fact."[30] "An issue is material if its resolution could affect the outcome of the action."[31]

> If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' ... that there is an absence of evidence to support the nonmoving party's case." While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. ... When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence support that party's claim."[32]

---

[27] *See Underwood v. Hunter*, 604 F.2d 367 (5th Cir. 1979); *Clark v. Tarrant County, Texas*, 798 F.2d 736 (5th Cir. 1986).

[28] *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).

[29] *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

[31] *Weeks Marine, Inc. v. Fireman's Fund Insurance Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

[32] *Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010) (citations omitted).

Because Demco, as plaintiff, bears the burden of proof at trial, Boxer and MSP must show that Demco has failed to submit evidence to support its case. In return, Demco must identify specific evidence that supports its claim.

### 2. Objection to the Affidavit of Patrick J. Callahan

Boxer objects to the affidavit of Patrick J. Callahan, President of Demco, as being "self-serving." Whether or not the affidavit is "self-serving" goes to the weight of credibility assigned to the affidavit and is not a legal objection to admission. Boxer's request to strike the affidavit is denied.

### 3. Confirmation of MSP's Plan

MSP seeks to dismiss the Complaint on the grounds that its confirmed Plan bars Demco from seeking payment on pre-petition invoices. The Order confirming the Plan ("Confirmation Order") provides that this Court retains jurisdiction as to "all matters relating or pertaining to the Plan."[33] Therefore, the Court has authority to interpret the Plan and Confirmation Order.

The Confirmation Order issues an injunction against taking action against MSP on pre-confirmation claims. Therefore, the Court finds that any pre-confirmation claims against MSP are barred by the Confirmation Order, except as provided in the Plan.

However, the Court also finds that the Confirmation Order does not enjoin claims against the Escrow Account. As of confirmation, both MSP and Boxer's interests in the Escrow Account were limited by the Escrow Agreement. The Escrow Agreement provides for the release of funds under certain conditions to satisfy expenses associated with environmental remediation of the

---

[33] Case 09-14172, P-571, ¶ J.

Property. At the time of confirmation, MSP had no right to require release of the funds in escrow except to the extent allowed by the Escrow Agreement.

At confirmation, certain claims against the Escrow Account were still pending in the form of Remediation Withdrawal Certificates for Demco's unpaid work. The Plan did not address these claims nor did it change the terms of the Escrow Agreement. Because MSP's bankruptcy estate only held a residual right to the Escrow Account, this Court does not find that the Plan affected the Escrow Agent's duty to abide by the terms of the Escrow Agreement, including if appropriate, the withdrawal or release of escrowed funds for pending Remediation Withdrawal Certificates.

The Court denies MSP's request for summary judgment based on MSP's assertion that the Plan controls distributions from the Escrow Account and the Plan injunction prohibits payment by the Escrow Agent to Demco.

### 4. Demco's Claims Against Boxer

MSP assigned to Boxer a portion of its rights in the Escrow Account. Boxer seeks dismissal of Demco's claims against it on the grounds that Demco has no rights against Boxer or any funds assigned to it by MSP. Demco and Boxer are both third parties. Therefore, the Court lacks jurisdiction over any claims by Demco against Boxer,[34] and this Court will dismiss the Complaint as to Boxer without prejudice.

### 5. Demco's Opposition to the Motions to Dismiss

In its Opposition to the Motions to Dismiss, Demco asserted several theories of recovery from MSP and the Escrow Account, such as assignment, stipulation *pour autrui*, and breach of

---

[34] *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

fiduciary duty. It is premature for the Court to address these, and the Court will reserve judgment until trial on the merits of the case.

### III. Conclusion

For the reasons assigned above, the Motion to Dismiss Entergy as a party to this adversary proceeding is granted for lack of jurisdiction. The Motion to Dismiss Boxer as a party is also granted for lack of jurisdiction. The Motion to Dismiss filed by MSP is denied. The Court will enter a separate order in accord with these reasons.

New Orleans, Louisiana, August 29, 2014.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge